# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CHRISTINA BRINSON, and all   *
other persons similarly   *
situated,   *
  *
   Plaintiff,   *     CV 215-99
  *
   v.   *
  *
PROVIDENCE COMMUNITY   *
CORRECTIONS,   *
  *
   Defendant.   *

## ORDER

Presently before the Court is a Motion to Dismiss filed by Defendant Providence Community Corrections ("Defendant"). Dkt. No. 8. Plaintiff Christina Brinson ("Plaintiff"), on behalf of herself and a purported class, has filed a Response in opposition to Defendant's Motion, dkt. no. 10, and Defendant has filed a Reply thereto, dkt. no. 13. For the reasons set forth herein, Defendant's Motion (dkt. no. 8) is **GRANTED in part** and **DENIED in part** as follows: the Motion is **DENIED** to the extent that it seeks a dismissal of Plaintiff's claims for lack of subject-matter jurisdiction, and it is **GRANTED** insofar as it requests dismissal for failure to state a claim.

**BACKGROUND**

In 2012, Plaintiff plead guilty to several misdemeanor offenses in the State Court of Wayne County, Georgia, including driving under the influence of drugs, reckless driving, driving with a suspended license, and fleeing or attempting to elude a police officer. Dkt. No. 1 (Plaintiff's Complaint, hereinafter "Compl."), ¶ 15 & Ex. C. The court sentenced Plaintiff to four consecutive twelve-month sentences. Id. While only the first sentence required confinement, participation in a residential drug treatment program, and community service, all of the sentences have involved at least some period of probation and the payment of fines and probation supervision fees. Id.

Defendant is a corporation that contracts to provide private probation services to numerous courts handling misdemeanors and traffic violations throughout Georgia. See id. at ¶¶ 3, 5. Defendant has provided such services to the State Court of Wayne County pursuant to a contract dated August 1, 2009 (the "Contract"). Id. at ¶ 7 & Ex. A.

I. **Defendant's Contracts with Georgia Courts**

O.C.G.A. §§ 42-8-100 to -108 (the "Statute"), which govern probation systems in counties and municipalities in Georgia, authorize the privatization of probation services. The Statute states, in pertinent part:

AO 72A
(Rev. 8/82)

The chief judge of any court within a county, with the approval of the governing authority of such county, shall be authorized to enter into written contracts with corporations, enterprises, or agencies to provide probation supervision, counseling, collection services for all moneys to be paid by a defendant according to the terms of the sentence imposed on the defendant as well as any moneys which by operation of law are to be paid by the defendant in consequence of the conviction, and other probation services for persons convicted in such court and placed on probation in such county. In no case shall a private probation corporation or enterprise be charged with the responsibility for supervising a felony sentence. . . . . The termination of a contract for probation services as provided for in this subsection shall be initiated by the chief judge of the court which entered into the contract, and subject to approval by the governing authority of the county which entered into the contract and in accordance with the agreed upon, written provisions of such contract.

O.C.G.A. § 42-8-101(a)(1).[1] Pursuant to this provision, Defendant entered into the Contract for probation services with the State Court of Wayne County on August 1, 2009. See Compl., ¶¶ 7, 21 & Ex. A. Judge Raymond S. Gordon, Jr. ("Judge Gordon") signed the agreement on behalf of the State Court of Wayne County and with the approval of the county governing authority, the Board of Commissioners. Id. at ¶¶ 8, 10 & Ex. A, p. 6.

The Contract provides for a one-year term beginning on August 1, 2009. Id. at ¶ 9 & Ex. A, p. 1. However, the Contract goes on to state that the agreement would renew automatically on the termination date, "for annual extension

---

[1] This provision was codified at O.C.G.A. § 42-8-100(g)(1) until July 1, 2015. See Act 73, sec. 3-2, §§ 42-8-100 to -101, 2015 Ga. Laws (2015) (codified as amended at O.C.G.A. § 42-8-101(a)(1)).

AO 72A
(Rev. 8/82)

periods of one year each provided neither party has provided to the other written notification of termination at least 90 days prior to the original termination date or any extension period." Id. at Ex. A, p. 1. The Contract could be "amended or supplemented only by the mutual written consent of the parties' authorized representatives" and could be terminated by either party, so long as certain conditions were met. Id. at Ex. A, pp. 2, 5. The Contract would be binding on both "the parties [t]hereto and their respective successors and assigns." Id. at Ex. A, p. 5.

An exhibit to the Contract details the scope of the parties' obligations, including that the State Court of Wayne County would "[r]efer all appropriate cases to [Defendant] for the provision of those services indicated by th[e] [a]greement." Id. at Ex. A, p. 8. In doing so, the court would "[l]imit indigent status cases . . . to no more than 10% of all referred cases." Id. Defendant's duties would include, in part, "[m]onitor[ing] compliance with conditions placed on referred cases as ordered by the court" and "[m]onitor[ing] and collect[ing] payments for fines, court costs and restitutions." Id. at Ex. A, p. 7. Defendant would charge probationers a supervision fee of $32.00 per month and "[p]rovide services based upon a sliding scale if the [p]robationer [were] determined to be indigent by the [c]ourt." Id. at Ex. A, pp. 8–

4

9.  However, "if more than 10% of the average daily active probationer population [were indigent and] placed on a sliding scale of services payments, the parties [would] work toward a mutually satisfactory solution including, but not limited to, amendment of th[e] . . . [a]greement." Id. at Ex. A, p. 8.

Following the expiration of the Contract's initial one-year term, and each additional one-year term thereafter, the parties have continued to operate according to their arrangement. See id. at ¶ 8.  Judge Gordon never signed any agreement to continue the arrangement at any time prior to his death on September 2, 2012, and his replacement as Chief Judge of the State Court of Wayne County has not signed a new contract. Id. at ¶¶ 8, 17. The members of the Board of Commissioners also have changed since the execution of the Contract, and they, too, have not taken any action to reapprove its terms. See id. at ¶¶ 11–13 (citing O.C.G.A. § 36-30-3(a) ("Section 36-30-3(a)").

As Defendant uses a form contract for its probation services, its contracts with other Georgia courts are nearly identical to the Contract with the State Court of Wayne County. Id. at ¶¶ 7, 18-19.  Each of these contracts includes, in relevant part, a one- or two-year term with automatic renewal and a 10% cap on the number of indigent probationers whom the court may refer to Defendant for supervision at a reduced fee.

AO 72A
(Rev. 8/82)

Id. at ¶¶ 18, 24, 33 & Exs. B, D-J.[2] Each of these contracts has been renewed for at least one additional period without the approval of the court's new chief judge or the county's new governing body. Id. at ¶¶ 18, 36.

## II. Plaintiff's Sentences

When Plaintiff plead guilty to the misdemeanor offenses in 2012, the State Court of Wayne County imposed four consecutive twelve-month sentences, each of which has included at least some probation time. Id. at ¶ 15 & Ex. C. The conditions of Plaintiff's probation have been, among others, that she report to Defendant as directed and pay a $32.00 supervision fee to Defendant each month. Id. at ¶ 16 & Ex. C. Plaintiff has made certain payments to Defendant since her sentencing. Id. at ¶ 16. According to Plaintiff, however, she has not had a job, has been unable to satisfy her payment obligations to Defendant, and "should . . . be[] considered indigent, but there is no incentive for Defendant to so notify the court since an indigent would be released of paying fees to it." Id. at ¶¶ 24, 26.

For reasons that are unclear, Defendant petitioned for a revocation of Plaintiff's probation in May 2014, which the court granted and ordered that Plaintiff check in to a residential drug treatment center. Id. at ¶ 26. On another occasion in

---

[2] According to Plaintiff, Wayne County and each of the counties or municipalities in which the other courts are located have poverty rates between 19% and 32.3%, with the exception of one having a 6.5% poverty rate. Compl., ¶ 35.

April 2015, the court signed a warrant for Plaintiff's arrest on the grounds that she had violated the conditions of her probation by "fail[ing] to report to the [p]robation [o]fficer as directed" and "fail[ing] to pay [c]ourt fines and fees as directed[:] [c]ourt [f]ine $4691, [u]rinalysis [f]ee $15." Id. at ¶ 26 & Ex. C-2. Plaintiff was arrested on June 19, 2015, and remained in confinement when she filed this action against Defendant on July 22, 2015. Id. at ¶¶ 26-27 & Ex. C-2.

### III. Plaintiff's Complaint

Plaintiff purports to represent a class of individuals in Georgia who have paid probation supervision fees to Defendant since July 1, 2011, and have done so when Defendant was operating under a contract that had not been approved by the presiding chief judge of the court or governing body of the county. Id. at ¶ 42. In count one of the Complaint, Plaintiff seeks the following relief pursuant to 28 U.S.C. § 2201: (1) a declaration that the Statute, as written and applied, is unconstitutional in that it violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; (2) a declaration that the Statute, as applied, is unconstitutional because it offends the due process clause and prohibition on imprisonment for debt under the Georgia constitution; (3) a declaration that the Statute's allowance for a private corporation to establish probation supervision fees

AO 72A
(Rev. 8/82)

violates the Georgia constitution's separation of powers doctrine; (4) a declaration that each of Defendant's contracts for probation services is void for lack of approval or reapproval by the current chief judge of the court or governing authority of the county; and (5) a declaration that Defendant cannot collect or retain probation supervision fees. Id. at ¶¶ 51-63. Plaintiff's count two sets forth a state-law claim of money had and received, in which Plaintiff seeks to recover all of the fees that Defendant has collected pursuant to these contracts, along with prejudgment interest. Id. at ¶¶ 64-70.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). A responding party thus may move to dismiss the complaint based on a "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"), or a "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). In addition, a district court must dismiss an action if it finds at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

AO 72A
(Rev. 8/82)

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint in setting forth a claim to relief. See Fed. R. Civ. P. 12(b)(6). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). To be plausible on its face, a complaint must set forth enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A plaintiff, therefore, must plead more than mere labels and conclusions, and a formulaic recitation of the elements of a particular cause of action does not suffice. Twombly, 550 U.S. at 555. Rather, at a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

In evaluating a Rule 12(b)(6) motion, a court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." Randall v.

AO 72A
(Rev. 8/82)

<u>Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Ordinarily, a court's review on a motion to dismiss is limited to the factual allegations on the face of the complaint, <u>see</u> <u>Iqbal</u>, 556 U.S. at 678, and a party's presentation of matters outside of the pleadings transforms the motion into one for summary judgment, Fed. R. Civ. P. 12(d). However, there are certain instances in which a court may consider matters outside of the pleadings at the dismissal stage. <u>See</u> <u>Davis v. Self</u>, 547 F. App'x 927, 929 (11th Cir. 2013). For example, the court may take into account facts that are subject to judicial notice and documents that are incorporated into the complaint by reference. <u>See</u> Fed. R. Evid. 201(a)-(d); <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>see also</u> Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); <u>Brooks v. Blue Cross & Blue Shield of Fla.</u>, 116 F.3d 1364, 1368 (11th Cir. 1997) (a court may examine documents attached to the complaint).

## DISCUSSION

Defendant now moves to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state a claim. Dkt. No. 8. Specifically, Defendant argues that Plaintiff fails to establish that this Court has jurisdiction to

10

hear her declaratory-judgment claims, because she does not show that she has standing to challenge the Statute and Defendant's contracts with the courts. Id. at pp. 7-14. Even if Plaintiff were to have standing to pursue such claims, Defendant contends, she fails to plausibly demonstrate that the Statute is unconstitutional or that Defendant's contracts are invalid. Id. at pp. 14-22. Defendant further asserts that Plaintiff does not sufficiently allege a state-law claim for money had and received. Id. at pp. 23-24. Plaintiff urges the Court to deny Defendant's Motion in its entirety, insisting that she has standing to bring the constitutional and contractual challenges and adequately pleads all claims for relief. Dkt. No. 10.

## I. Claims for Declaratory Relief (Count One)

### A. Standing

Under Article III of the United States Constitution, federal-court jurisdiction extends only to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. Rooted in Article III's case or controversy requirement is the doctrine of standing. McGee v. Solicitor Gen. of Richmond Cty., 727 F.3d 1322, 1326 (11th Cir. 2013) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). Standing requires that a plaintiff, at the time of filing suit, have "a 'personal stake' in the outcome of the litigation." Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987).

11

As the party seeking to invoke federal jurisdiction, the plaintiff bears the burden of establishing standing. <u>See</u> <u>Bischoff v. Osceola Cty.</u>, 222 F.3d 874, 878 (11th Cir. 2000) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). To do so, the plaintiff must satisfy three requirements: First, she must demonstrate that she has suffered an injury in fact—meaning an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent" rather than "'conjectural' or 'hypothetical.'" <u>Bochese</u>, 405 F.3d at 980 (quoting <u>Dillard v. Baldwin Cty.</u> <u>Comm'rs</u>, 225 F.3d 1271, 1275 (11th Cir. 2000)). Second, the plaintiff must prove a causal connection between that injury and the challenged conduct of the defendant, which requires that the injury be "fairly traceable" to the conduct. <u>Id.</u> (quoting <u>Dillard</u>, 225 F.3d at 1275). Third, and finally, the plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Id.</u> (quoting <u>Dillard</u>, 225 F.3d at 1275).

## 1. Injury in Fact

The Court of Appeals for the Eleventh Circuit recently considered two cases in which probationers challenged the constitutionality of the Statute and the validity of related contracts and, in both instances, found the absence of any injury in fact to be dispositive of the standing inquiry. <u>See</u>

12

Keen v. Judicial Alternatives of Georgia, Inc., No. 15-13764,
2015 WL 9203874, at *1 (11th Cir. Dec. 17, 2015); McGee, 727
F.3d at 1322.

In McGee, the plaintiff plead guilty to two misdemeanor
offenses in the State Court of Richmond County, Georgia, and was
placed on probation with, and ordered to pay a monthly probation
supervision fee to, a private probation-services company that
had contracted with the county. 727 F.3d at 1323. When the
plaintiff stopped reporting to the company and paying his
monthly fee, the court revoked his probation and mandated that
he remain in custody for two months or until he paid the $186.00
in arrearages to the company. Id. at 1324. By the time that he
filed suit seeking to have the Statute declared
unconstitutional, he was no longer under any obligation to serve
probation or pay probation supervision fees. See id. On appeal
from a district-court order dismissing the claim as moot, the
Eleventh Circuit determined that the case should have been
decided on the threshold jurisdictional issue of standing. Id.
The Eleventh Circuit noted that to have standing, the plaintiff
"must show a sufficient likelihood that he will be affected by
the allegedly unlawful conduct in the future." Id. (quoting
Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir.
2004)). As the allegedly unlawful conduct was the state court
requiring the indigent plaintiff to pay the probation

13

supervision fee in accordance with the Statute, and as he was no longer under that order, the plaintiff had to "demonstrate a sufficient likelihood of being convicted in that court and being placed on probation" and failed to do so in that case. Id. at 1324, 1326.

Keen similarly involved a plaintiff whose misdemeanor violations resulted in probation and probation supervision fees payable to a private probation-services company under contract with the State Court of Treutlen County, Georgia. Keen v. Judicial Alternatives of Georgia, Inc., 124 F. Supp. 3d 1334, 1334 (S.D. Ga. 2015), aff'd in part, vacated in part, 2015 WL 9203874. After serving his probationary period and paying the requisite fees and costs to the company, id., the plaintiff— represented by the same counsel as Plaintiff in this case—filed a class-action complaint against the company making nearly identical allegations regarding the Statute and the operative contract as does Plaintiff here. See Complaint, Keen v. Judicial Alternatives of Georgia, Inc., 124 F. Supp. 3d 1334 (S.D. Ga. 2015) (No. CV315-030), ECF No. 1. Relying on McGee, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's federal constitutional challenge to the Statute for lack of standing and found that the court should have dismissed the state constitutional challenge to the Statute for lack of standing as well. Keen, 2015 WL 9203874, at *1.

AO 72A
(Rev. 8/82)

The Eleventh Circuit upheld the court's dismissal of the plaintiff's remaining declaratory-judgment and state-law claims, finding that the plaintiff failed to state any claim to invalidate the contract, declare the defendant unable to collect fees, or obtain recovery of money had and received. Id. at *2.

This case is distinguishable from McGee and Keen in that Plaintiff sufficiently demonstrates an injury in fact to support her standing to pursue this action. Unlike the plaintiff in McGee whose probation had been revoked in favor of confinement and a fine, and the plaintiff in Keen who had completed his probationary period and payment obligation, Plaintiff was still subject to probation and required to pay monthly supervision fees to Defendant when she filed this action. See Compl., ¶¶ 15-16 & Ex. C. Indeed, according to the Complaint, her probation and payment obligations will not terminate until November 2016, forty-eight months from the November 2012 sentencing. Id. at ¶ 15. While Plaintiff's probation was revoked on one occasion in May 2014, the state court imposed a new sentence that again included a period of probation. Id. at ¶ 26. Plaintiff thus remained on probation—and, in fact, was in jail for failing to comply with her probation conditions—at the time that she filed this action on July 22, 2015. Id. at ¶¶ 26-27 & Ex. C-2. Accordingly, Plaintiff need not rely on a "sufficient likelihood" that she will again be convicted and

AO 72A
(Rev. 8/82)

placed on probation, to overcome her burden of showing an injury that is more than speculative or conjectural. See McGee, 727 F.3d at 1324, 1326. Rather, Plaintiff's asserted injury—the obligation to pay supervision fees to a private probation company—was imminent when she filed this suit and continues today. Thus, she had satisfied the first standing requirement.[3]

### 2. Causation

To satisfy the causation requirement, a plaintiff must prove that the injury is "fairly traceable" to the challenged conduct of the defendant. Bochese, 405 F.3d at 980 (quoting Dillard, 225 F.3d at 1275). A plaintiff meets this standard if she "demonstrate[s] 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.'" Jacobs v. Fla. Bar, 50 F.3d 901, 904 (11th Cir. 1995) (alterations in original) (quoting Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993))

Plaintiff sufficiently establishes causation in this case. As Plaintiff points out in her briefing, see dkt. no. 10, p. 13, she would not be obligated to pay probation supervision fees to Defendant had Defendant not entered into the Contract containing

---

[3] It is Plaintiff's obligation to pay fees to Defendant in the future, not her past payments of these fees, that constitutes an injury in fact with respect to Plaintiff's declaratory-judgment claims. Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1348 (11th Cir. 1999) ("Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").

AO 72A
(Rev. 8/82)

the fee provision with the State Court of Wayne County, see compl., ex. A, pp. 8-9. Defendant argues that it was the court that decided to put Plaintiff on probation and subject her to supervision fees, see dkt. no. 8, pp. 10-11; however, this statement, while true, overlooks Defendant's role in contracting to supervise probationers at a fee and providing those services in Plaintiff's case. Plaintiff's obligation to pay probation supervision fees to Defendant is fairly traceable to that conduct.

### 3. Redressability

Under the third and final standing requirement, a plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Bochese, 405 F.3d at 980 (quoting Dillard, 225 F.3d at 1275). Plaintiff succeeds in making such a showing here. Plaintiff's claims at issue do not seek relief in the form of an order mandating that the court or Defendant take affirmative steps to release her from jail, take her off of probation, or reimburse her for past fee payments. Instead, these claims request a declaratory judgment that the Statute is unconstitutional; the Contract is invalid; and Defendant is not entitled to retain or collect fee payments pursuant to the same. Compl., ¶¶ 57-63. If the Court were to find in Plaintiff's favor and grant the requested relief, the likely result would be

17

that the State Court of Wayne County would no longer require that Plaintiff be subject to Defendant's supervision or its supervision fees while on probation.  See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 97-98 (1992) (a district court can expect that state authorities will give "full credence" to a declaratory judgment and thus need not enter an injunction to ensure compliance); Wooley v. Maynard, 430 U.S. 705, 711 (1977) (the effect of declaring a statute unconstitutional is "virtually identical" to enjoining its enforcement, such that "a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and . . . stronger injunctive medicine will be unnecessary" (quoting Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975))).  This result would remedy Plaintiff's asserted injury in that she would not be obligated to pay fees to Defendant as a condition of her probation in the future.

### 4. Conclusion

Plaintiff thus meets the requirements for standing to contest the Statute's constitutionality under federal and state law.  Defendant's Motion to Dismiss on jurisdictional grounds is, therefore, **DENIED**.

### B.  Constitutionality of the Statute on Its Face

A facial challenge seeks to invalidate a statute "even though [its] application in the case under consideration may be

constitutionally unobjectionable." Jacobs, 50 F.3d at 905-06 (quoting Forsyth Cty. v. Nationalist Movement, 505 U.S. 123 (1992)). Facial challenges are "the most difficult . . . to mount successfully." City of L.A. v. Patel, 135 S. Ct. 2443, 2449 (2015) (alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). Under both federal and Georgia law, a plaintiff making a facial challenge must establish that the statute "is unconstitutional in all of its applications." See id. at 2451 (quoting Wash. St. Grange v. Wash. St. Republican Party, 552 U.S. 442, 449 (2008)); Sentinel Offender Svcs., LLC v. Glover, 766 S.E.2d 456, 465 (Ga. 2014) ("[W]here . . . a party's First Amendment rights are not implicated, the party mounting the challenge can succeed only 'by establish[ing] that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep.'" (third alteration in original) (quoting Blevins v. Dade Cty. Bd. of Tax Assessors, 702 S.E.2d 145 (Ga. 2010))).

In order to evaluate the facial constitutionality of a state statute, a district court first "must determine what [the] state statute means." See Broadrick v. Oklahoma, 413 U.S. 601, 617 n.16 (1973). A federal court has "no authority to construe the language of a state statute more narrowly than the

19

construction given by that [s]tate's highest court." City of
Chi. v. Morales, 527 U.S. 41, 60 (1999). "The power to
determine the meaning of a statute carries with it the power to
prescribe its extent and limitations as well as the method by
which they shall be determined." Id. (citing Smiley v. Kansas,
196 U.S. 447, 455 (1905)). Accordingly, "[i]n evaluating a
facial challenge to a state law, a federal court must . . .
consider any limiting construction that a state court or
enforcement agency has proffered." Kolender v. Lawson, 461 U.S.
352, 355 (1983) (quoting Vill. of Hoffman Estates v. Flipside,
Hoffman Estates, 455 U.S. 489, 494 (1982)).

Here, the Supreme Court of Georgia has unequivocally
interpreted the Statute as "simply giv[ing] courts the authority
to contract with private providers for the administration of
probation services." Glover, 766 S.E.2d at 466 (citing O.C.G.A.
§ 42-8-100(g)(1)). The Glover court determined that under the
statutory framework, "it is the sentencing court which decides
whether or not to probate a defendant's sentence and determines
the conditions under which such probation shall occur." Id. at
467 (citing O.C.G.A. § 17-10-1(a)(1)). In particular, the court
found that the Statute contemplates that "it is the sentencing
court which bears the responsibility for determining whether a
probationer has the ability to make court-ordered payments,
including the payment of fees, and to consider alternative

AO 72A
(Rev. 8/82)

measures of punishment other than imprisonment where a probationer is unable to do so." Id.  The Glover court noted that "[n]othing on the face of the [S]tatute allows for the imposition of unreasonable or illegal fees on probationers by the sentencing court, nor permits the court to improperly delegate its duties . . . to probation officers."  Id.

Plaintiff challenges the Statute as unconstitutional on its face under the due process clauses of the United States and Georgia constitutions, as well as Georgia's constitutional prohibition on imprisonment for debt and separation-of-powers doctrine.

### 1.   Federal and State Due Process Clauses

The Fifth Amendment to the U.S. Constitution states, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Significantly, the Fifth Amendment Due Process Clause serves as a limitation only on the federal government. See Pub. Utils. Comm'n of D.C. v. Pollak, 343 U.S. 451, 461 (1952).  As there is no allegation of involvement by the federal government or any federal officer or agent in this case, see compl., Plaintiff fails to state any viable claim under the Fifth Amendment Due Process Clause.

By contrast, the Fourteenth Amendment to the U.S. Constitution provides that "[n]o [s]tate shall . . . deprive any

AO 72A
(Rev. 8/82)

person of life, liberty, or property, without due process of law." See U.S. Const. amend. XIV, § 1. It is the Due Process Clause of the Fourteenth Amendment, rather than the Fifth Amendment, that explicitly applies to state actors. The Georgia constitution similarly mandates that "[n]o person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. art. I, § 1, para. I. Plaintiff maintains that the Statute violates due process guarantees in that it creates a conflict of interest and is unconstitutionally vague. See Compl., ¶¶ 23, 26–27; Dkt. No. 10, pp. 17–20.

a. Conflict of Interest

"It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009) (alteration in original) (quoting In re Murchison, 349 U.S. 133, 136 (1955)); see also Glover, 766 S.E.2d at 467. A statute that creates a conflict of interest undermining the fairness or impartiality of the tribunal may give rise to a procedural due process violation. See, e.g., Warner Cable Commc'ns, Inc. v. City of Niceville, 911 F.2d 634, 640 (11th Cir. 1990); Glover, 766 S.E.2d at 467. Such has been the case where, for example, a statute or other state practice resulted in a judge or decision maker having a significant financial interest in the outcome of a case. See Caperton, 556 U.S. at 876–79 (collecting cases); see, e.g.,

22

Connally v. Georgia, 429 U.S. 245, 247-50 (1977) (Georgia statute unconstitutional where it allowed a justice of the peace responsible for issuing warrants to collect a fee for each warrant issued, and prohibited him from charging a fee if he declined to issue a warrant); Tumey v. Ohio, 273 U.S. 510, 520, 535 (1927) (due process violation where the mayor of a village had the sole authority to try certain cases and received a salary supplement, the funds for which were derived from the fines assessed in those cases).

In the instant matter, the Statute, on its face, does not create any conflict of interest antagonistic to the Fourteenth Amendment. Under the Statute, it is the court—and the court alone—that decides whether or not to place a misdemeanant on probation and whether or not she is able to pay probation supervision fees. Glover, 766 S.E.2d at 467 (citing O.C.G.A. § 17-10-1(a)(1)). The Statute "simply gives courts the authority to contract with private providers for the administration of probation services." Id. at 466 (emphasis added) (citing O.C.G.A. § 42-8-100(g)(1)). As such, the Statute clearly delineates the decision-making function of the state-court judge and the administrative role of the private probation company. That a probation officer is able to use court process to collect fees for his employer, as Plaintiff emphasizes, see dkt. no. 10, p. 18, does not in any way displace this division of authority

23

or give the state-court judge any personal pecuniary interest in the outcome of the case. Because nothing in the Complaint or its attachments suggests that the state-court judge, as the sole decision maker, stands to incur a personal financial gain in sentencing misdemeanant defendants, there is no plausible conflict of interest implicating federal constitutional concerns.

Nor is there any cognizable claim that the Statute gives rise to a conflict of interest offending Georgia's constitutional due process clause. The Georgia Supreme Court expressly considered this issue in Glover and determined that, "[w]hile the supervision of probation is a function historically performed by state probation officers, the mere act of privatizing these services does not violate due process." 766 S.E.2d at 467. The court reasoned as follows:

> Nothing on the face of the statute allows [the defendant] or any other private probation company to deprive an individual of his or her property or liberty without due process of law[,] nor is there anything which authorizes the creation of a private probation system that is so fundamentally unfair that it fails to comport with our notions of due process. The due process clause does not prohibit the State from entering into a contract with a private entity for the provision of probation supervision services but requires that when it chooses to do so the State continue to provide due process to individuals under its supervision.

Id. Noting that the sentencing court retains responsibility for determining a defendant's sentence and the conditions of any

AO 72A
(Rev. 8/82)

probated sentence, the court rejected the plaintiffs' facial due process challenge to the Statute under Georgia law. Id. For the reasons articulated by the State's highest court, Plaintiff cannot sustain a claim based on an asserted conflict of interest in violation of the Georgia constitution.

b. Vagueness

The void-for-vagueness doctrine states that the government violates due process guarantees "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015) (citing Kolender, 461 U.S. at 357-358); see also Whatley v. State, 774 S.E.2d 687, 688 (Ga. 2015) (quoting Parker v. City of Glennville, 701 S.E.2d 182 (Ga. 2010)). This principle applies to statutes that define the elements of crimes, as well as those that fix sentences. Johnson, 135 S. Ct. at 2556 (citing United States v. Batchelder, 442 U.S. 114, 123 (1979)). The concern with regard to arbitrary enforcement in particular is that a vague criminal statute "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Kolender, 461 U.S. at 358 (alteration in original) (quoting Smith v. Goguen, 415 U.S. 566, 575 (1974)).

AO 72A
(Rev. 8/82)

Plaintiff does not show that the void-for-vagueness doctrine has any application in this case.  The "vagueness" allegations in the Complaint include that the Statute is devoid of any limit on probation supervision fees, any mechanism for reporting a probationer's financial ability to pay fees, and any procedure to prevent incarceration for the inability to pay fees.  Compl., ¶¶ 23, 26-27.  However, as several courts considering this or similar statutes have found, "the imposition of probation supervision fees pursuant to contract constitutes a civil fee for services, not a criminal punishment."  Keen, 124 F. Supp. 3d at 1340 (citing Owens v. Sebelius, 357 F. Supp. 2d 1281, 1287 (D. Kan. 2005) ($25.00 monthly parole supervision fee was not punitive in nature, as it was modest and provided an exemption for indigent offenders); Glaspie v. Little, 564 N.W.2d 651, 654 (N.D. 1997) ($30.00 monthly fee to defray the costs of supervision was a civil fee for services); and Pennsylvania v. Nicely, 638 A.2d 213 (Pa. 1994) (monthly fee to offender supervision programs was administrative and not punitive in nature)).  As the fees are not part of the punishment for a misdemeanor offense, but rather are incident to a probated sentence, the Statute need not prescribe the standards or safeguards for their collection.  The absence of such provisions from the Statute simply does not give rise to the type of concern that would be present if the state court were

26

arbitrarily applying the Georgia statutes defining criminal offenses and their punishments, see O.C.G.A. §§ 16-1-1 to 16-17-10.

Thus, Plaintiff's Complaint falls short of plausibly suggesting that the Statute is facially invalid on federal and state due process grounds. Defendant's Motion to Dismiss these claims is **GRANTED.**

### 2. State Prohibition on Imprisonment for Debt

The Georgia constitution mandates that "[t]here shall be no imprisonment for debt." Ga. Const. art. I, § 1, para. XXIII. The Supreme Court of Georgia has clarified that "imprisonment for debt" is distinct from imprisonment for criminal behavior. Glover, 766 S.E.2d at 468 (citing Connally v. State, 458 S.E.2d 336 (Ga. 1995)). While Georgia's constitution prohibits imprisonment for debt, it "does not forbid imprisonment for criminal conduct, even though the criminal conduct also results in a civil debt." Id. (citing Connally, 458 S.E.2d at 336). Applying this rule in Glover, the Georgia Supreme Court determined that the Statute "does not on its face condone imprisonment for debt." Id. Accordingly, Plaintiff cannot sustain a facial constitutional challenge on this basis. Defendant's Motion is **GRANTED** as to this claim.

### 3. State Separation-of-Powers Doctrine

AO 72A
(Rev. 8/82)

The separation-of-powers provision of the Georgia constitution reads as follows: "The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." Ga. Const. art. I, § 2, para. 3. As discussed supra, the imposition of probation supervision fees by contract is purely administrative and does not interfere with the state-court judge's exclusive authority to decide the terms and conditions of punishment. See Nicely, 638 A.2d at 217 (statute requiring probationers to pay monthly supervision fees did not increase punishment and thus did not violate separation-of-powers doctrine). Plaintiff thus fails to set forth any colorable claim under a separation-of-powers theory, and, therefore, this portion of Defendant's Motion is **GRANTED**.

### C. Constitutionality of the Statute as Applied

Where a plaintiff seeks to vindicate her own rights, the challenge is as applied. Jacobs, 50 F.3d at 906. In this case, Plaintiff does not make out a plausible as-applied challenge to the Statute. Many of Plaintiff's "as-applied" allegations consist of the same arguments advanced with regard to the constitutionality of the Statute on its face and, accordingly,

28

fail for the same reasons discussed in Subpart I.B.[4] Nor does Plaintiff allege that the State Court of Wayne County or Defendant acted contrary to that which the Statute constitutionally authorizes: Plaintiff avers that the court agreed to the fees set forth in the Contract, sentenced Plaintiff to probation, and determined that she would be subject to monthly supervision fees in the amount called for in the Contract. Compl., ¶¶ 8, 15 & Exs. A, C. She does not contend that Defendant ever took any action or charged any fee that was inconsistent with the Contract or the court's mandate.

Plaintiff's as-applied arguments, however, do go further than her facial challenge insofar as she alleges the following: (1) that the Contract imposes a 10% limitation on indigent probationers referred to Defendant; (2) that she does not have a job and should have been considered indigent when she became unable to pay the fee to Defendant; and (3) that she was arrested and jailed for missing monthly fee payments. Id. at ¶¶ 24, 26-27. As discussed in further detail with regard to Plaintiff's claim for money had and received in Part II, the

---

[4] Specifically, Plaintiff alleges that the Contract is unconstitutional as applied, because it lacks a provision directing Defendant to assess her financial status and report the same to the court, as well as a procedure to prevent the incarceration of probationers who are indigent or otherwise fail to pay a debt owed to Defendant. Compl., ¶¶ 26-27. These allegations fail to state any claim for relief under the Fifth or Fourteenth Amendment to the U.S. Constitution or the asserted provisions of the Georgia constitution. See supra Subpart I.B.

AO 72A
(Rev. 8/82)

Contract's 10% limitation on indigent probationers neither divests the court of its authority to determine indigency nor restricts its discretion in doing so; rather, the provision merely limits the number of indigent probationers whom the court may refer to Defendant for supervision, see id. at ex. A, pp. 8-9. To the extent that Plaintiff asserts that she became unable to pay the supervision fees during her period of probation, there is no indication in the Complaint or attached documents that she petitioned the court for an indigency determination, or otherwise sought to have the court reconsider this requirement incident to her probated sentence, and was denied in that endeavor. See id. at ¶ 24 ("Plaintiff does not have a job and should . . . [be] considered indigent, but there is no incentive for Defendant to so notify the court.").

Inasmuch as Plaintiff's newfound inability to pay may have been raised to the court during her revocation hearings, Plaintiff's averments suggest only that it was the court—not Defendant or any other person—that decided that an additional probated sentence, including an obligation to pay the standard supervision fee, was nevertheless appropriate in her case. See id. at ¶¶ 26-27 & Ex. C-2. As to Plaintiff's allegation that she was arrested and put in jail for failing to pay the supervision fee, see id. at ¶ 27, her Complaint as a whole reflects that her confinement resulted from her failure to

AO 72A
(Rev. 8/82)

satisfy several terms and conditions of her probation, including her "fail[ure] to report to the [p]robation [o]fficer" and "fail[ure] to pay . . . [a] [c]ourt [f]ine [of] $4691" and "[u]rinalysis [f]ee [of] $15," id. at ¶ 26 & ex. C-2.  Moreover, even if Plaintiff's confinement was based on her failure to pay probation supervision fees as she alleges, it would not constitute imprisonment for debt, based on Plaintiff's allegations that she was jailed only after pleading guilty to misdemeanor offenses and violating the conditions of her probated sentence.  See Glover, 766 S.E.2d at 468 ("imprisonment for debt" distinguishable from imprisonment for criminal behavior, even where criminal behavior results in a civil debt).

In these ways, Plaintiff's allegations do not plausibly show that the Statute, as applied to her, violated her federal or state due process rights, or the state prohibition on imprisonment for debt or separation-of-powers doctrine.  Defendant's Motion to Dismiss Plaintiff's as-applied claims is **GRANTED**.

### D.  **Validity of the Contract**

A plaintiff may file a declaratory-judgment action to obtain a ruling as to the validity of a contract or the rights or obligations of a party thereto.  See, e.g., Polo Golf & Country Club Homeowners' Ass'n v. Rymer, 754 S.E.2d 42, 45-46 (2014).  For the reasons discussed with regard to Plaintiff's

31

claim for money had and received in the next section, Plaintiff does not plead any facts that would support a judgment that Defendant's Contract with the State Court of Wayne County is invalid and that Defendant is not entitled to collect any fees on this basis. Consequently, Defendant's Motion to Dismiss these claims for failure to state a claim is **GRANTED**.

## II. Claim for Money Had and Received (Count Two)

Georgia recognizes a cause of action for money had and received "where it appears that the defendant[] ha[s] received money belonging to the plaintiff which, in equity and good conscience, the defendant[] [is] not entitled to retain." Cochran v. Ogletree, 536 S.E.2d 194, 197 (Ga. Ct. App. 2000) (citing C&S Nat'l Bank v. Youngblood, 219 S.E.2d 172 (Ga. Ct. App. 1975), and James Talcott, Inc. v. Roy D. Warren Commercial, 171 S.E.2d 907 (Ga. Ct. App. 1969)). In Glover, several misdemeanor probationers successfully pursued an action for money had and received against the private probation provider in state court. 766 S.E.2d at 460-63, 470-73. As the Keen court explained, the Supreme Court of Georgia carefully crafted its decision as to these claims:

> In formulating this ruling, the Georgia Supreme Court was careful to note that what the plaintiffs sought was not contractually authorized probation supervision fees but "probation supervision fees which [the probation company] unlawfully collected from misdemeanor probationers in contravention of the dictates of the private probation statutory framework

32

approved by the Georgia legislature." [Glover, 766
S.E.2d] at 471 (emphasis added). In particular, the
court found that [the company] was unjustly enriched
when [it] collected probation supervision fees in
excess of those authorized by the sentencing court or
fees that were authorized by the sentencing court
unlawfully. Id. at 470. On this last point, the
undisputed facts in Glover showed that [the]
[c]ounty's Board of Commissioners never authorized the
contract between the Chief Judge and [the company], in
violation of O.C.G.A. § 42-8-100(g); accordingly, [the
company's] contract with [the] [c]ounty was invalid.
Id. at 471. Thus, the Georgia Supreme Court held that
the . . . plaintiffs could sustain a claim for money
had and received under an invalid contract. . . . .

In short, the Glover court only recognized a cause of
action for money had and received to the extent a
plaintiff alleged that the private probation company
collected supervision fees in contravention of the
Statute.

Keen, 124 F. Supp. 3d at 1334 (emphasis in original).

Accordingly, the issue in this context becomes whether the

probation company was operating under an invalid contract and

thus in violation of the Statute.

In the instant matter, Plaintiff fails to sufficiently

allege grounds upon which to invalidate the Contract. Plaintiff

does not attack the validity of the Contract on the basis that

it was never signed by the Chief Judge of the Wayne County State

Court or the Wayne County Board of Commissioners, as required by

the Statute. To the contrary, Plaintiff recognizes that Judge

Gordon executed the agreement on behalf of the State Court of

Wayne County and with the approval of the county Board of

Commissioners. Compl., ¶¶ 8, 10 & Ex. A, p. 6. Nor does

Plaintiff allege that Defendant ever collected probation supervision fees without the court's authorization or did so in any manner not provided for in the Contract.

Rather, Plaintiff asserts, in part, that the Contract is invalid because the presiding Chief Judge and members of the Board of Commissioners in Wayne County did not reapprove the agreement following the initial one-year term or any subsequent term. See id. at ¶¶ 12, 14. The Statute provides that a contract for probation services may be terminated by the chief judge of the court, with the approval of the county governing authority and in accordance with the contract's agreed-upon terms. O.C.G.A. § 42-8-101(a)(1). As the Contract contemplates termination by either the Chief Judge of the State Court of Wayne County or by Defendant, provided that certain conditions are met, compl., ex. A, pp. 2, 5, the Contract's termination provision is consistent with the Statute. Notably, Plaintiff makes no allegation that the Chief Judge, the Board of Commissioners, or Defendant sought to terminate the Contract at any time. Instead, the Complaint and its attachments tend to suggest only that these parties have continued their relationship consensually from year to year, pursuant to the Contract's provision for automatic renewal in the absence of express notice to the contrary, see compl., ex. A, p. 1.

34

Plaintiff's allegations based on Section 36-30-3(a) do not change this result. See Compl., ¶¶ 11, 13 (citing O.C.G.A. § 36-30-3(a)). Section 36-30-3(a) states that "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." O.C.G.A. § 36-30-3(a). Georgia courts have determined that the statute applies to counties, as well as actions effected by contract rather than by ordinance. See Madden v. Bellew, 397 S.E.2d 687, 688 (Ga. 1990). It is unclear whether Section 36-30-3(a) even applies in this case, given that it is the State Court of Wayne County—not Wayne County itself or the Board of Commissioners—that is a party to the Contract. See Compl., ¶ 7 & Ex. A. However, even assuming, arguendo, that Section 36-30-3(a) could apply on account of the Board of Commissioners' limited role in approving the Contract, this case nevertheless would fall under an exception to the statute applicable where a "contract [is] . . . entered into with a local government by virtue of express legislative authority to do so," Keen, 2015 WL 9203874, at *2.

Plaintiff also challenges the Contract on the grounds that the indigency provision is against public policy. See Compl., ¶¶ 24, 32. Contrary to Plaintiff's arguments, see dkt. no. 10, pp. 4-5, 16 (citing Glover, 766 S.E.2d at 456), the Contract is consistent with Georgia law, in that it leaves it to the court

to decide which probationers are indigent and will be subject to a reduced supervision fee, see compl., ex. A, pp. 8-9. Moreover, the Contract does not create a cap on the number of indigent probationers as Plaintiff would contend, see, e.g., compl., ¶ 24; rather, the Contract merely provides that of the cases that the court refers to Defendant for its probation services, no more than 10% may be cases in which the court has deemed the probationer indigent, id. at ex. A, pp. 8-9. The Statute expressly provides that courts may contract with private probation companies or establish their own probation systems, see O.C.G.A. § 42-8-101(a), and there is no allegation or argument that the Contract was exclusive or that the court could not use these alternative measures in the event that it were to find a probationer to be indigent but could not refer her for Defendant's supervision without exceeding the 10% limitation. Even if the court were to refer more indigent probationers to Defendant than are contractually allowed, the Contract requires that Defendant work with the court to reach an amicable solution, which could include amending the Contract. Compl., Ex. A, pp. 8-9. Consequently, Plaintiff's Complaint contains no suggestion that the Contract affords Defendant any direct or indirect control over the court's indigency determination, in violation of Georgia law.

AO 72A
(Rev. 8/82)

Plaintiff's assertion that the Contract is invalid lacks merit, as Plaintiff fails to sufficiently allege that Defendant collected probation supervision fees under anything other than a lawful, statutorily permitted Contract. Plaintiff thus fails to state any colorable claim for money had or received under Georgia law. Defendant's Motion to Dismiss to this claim is **GRANTED**.

## CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss (dkt. no. 8) is **GRANTED in part** and **DENIED in part**: it is **DENIED** as to its request for dismissal based on a lack of subject-matter jurisdiction under Rule 12(b)(1), and it is **GRANTED** as to its request for dismissal for failure to state a claim under Rule 12(b)(6). Plaintiff's claims are hereby **DISMISSED** for failure to state a claim. The Clerk of Court is **DIRECTED** to enter the appropriate judgment of dismissal and to close this case.

**SO ORDERED**, this 31ST day of March, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA